Smith, J.
This was an action of trover for ne-groes, that had been claimed by the plaintiff’s intestate upwards of thirty-two years. The case depended entirely on matters of fact, and the weighing of evidence, which belonged exclusively to the jury, and they found a verdict for the plaintiff. I see no reason why that verdict should be set aside. I am, therefore, against the new trial.
Brevakd, J.
From the report of the judges who tried this cause, I am of opinion, that it turned altogether on the evidence of facts, which the jury were authorised exclusively to decide on. In deciding on the facts, the credibility of the witnesses was necessarily involved, and this was a subject entirely for the jury. There was evidence on both sides. If I had been of the jury, I should probably *377 have been puzzled how to find, and most probably would have found as they did. The motion ought, therefore, to be refused.
Bay, J.
From the report of the presiding judge, it appeared that the deceased, Mr. Martin, intermarried with a daughter of Mr. Baldrick, the father of defendant, some time in the year 1776; That a Mrs. Brown, sister of Mrs. Martin, proved that soon after the marriage, Mrs. Martin’s father bought a negro wench, named Nancy, the mother of the negroes (or mulattoes) in question, and sold them to Mr. Martin, the intestate, for ¿01000 old currency; and that they remained in Martin’s possession till the day of his death,' which was some time in the year 1803 -that she Mrs. Brown, saw Mr; Martin pay some money to Mr. Baldrick, his father^ in-law, for the wench, among which was some hard money.
The defence set up by defendant was, that his father only lent the negroes in question to Mr. Martin; and that he neither sold them to Mr. Martin, nor gave them to his sister, but loaned them till he should call for them. For this purpose he called one Hendrickson, who swore, that in the year 1792, he heard Mr. Martin say his father-in-law had only lent him these negroes. Mrs. Hendrickson, the wife of the last witness, swore that she heard Mrs. Martin, in the year 1798, say, that her father had only lent her the wench Nancy. Dr. Lynah was *378 fami]y Physician to Martin, and attended the wench wheii sick. Martin always paid him for' his attendance and medicine; always thought she was Martin’s property: Jacob Martin was very intimate in the family of Martin : did business for him in his life time, and for Mrs. Martin after his death : never heard him, or Mrs. Martin, say the negroes belonged to Baldrick’s estate : always thought they were Martin’s, and does not think Martin would have kept negroes in his possession belonging to any one else : he died wealthy, worth 880,000. The judge further states in his report, that he submitted this case to the jury, to determine from the evidence on which side the scale preponderated, and the jury found for the defendant.
It appears to me, that the jury exercised a very proper discretion in this case in finding a verdict for the defendant. Mrs. Brown, who was a member of the family of old Mr. Baldrich, and who in fact was swearing against her own interest, very clearly proves a sale on the part of Baldrick to his son-in-law, Mr. Martin, so long ago as the year 1776, and also a possession afterwards till the day of Martin’s death in 1803, a period of 27 years. This possession is also proved by two other witnesses.
The defence set up in this case, i: that it was a loan,” has, at the first blush, a very questionable aspect; because it is hardly to be presumed, that if tlje wench, Nancy had, as alleged, really been loan *379 ed to Mr. Martin when he was first married, and probably m slender circumstances, that Mr. Bald-rich, the lender, would, after a considerable num her of years, had elapsed, when in the mean time Mr. Martin had.greatly increased his pecuniary resources, have left her longer- in his. possession, or that Martin himself would have remained under such an obligation to his father-in-law, when he had no longer any occasion for sueh a favour.
Be this, however, as it may, the idea of a loan of negroes to a young married couple, om their going off to settle and begin the world for themselves, has always, in this country, been very much discountenanced : and in cases almost without number, where such pretexts have been set up afterwards by parents, or those entitled to a distributable share of their estates after their decease, such pretended Joans have been construed into gifts.
In the present case, if no sale had been proved by Mrs. Brown from old Baldrick to his son-in-law Martin, yet, his permitting the wench and her children to go off with the young married couple, so soon after marriage, and their remaining so long in their possession afterwards, would, in my opinion, heve beeii evidence sufficient to warrant the jury in finding a verdict for plaintiff. .What degree of credit was given by the jury to the testimony of Mr. and Mrs. Hendrickson, is not for me to say. But, allowing that they gave the utmost weight it was entitled to, still it would amount only to the *380 loose, random declarations of Martin, without end or object, which would never go to deprive him of a vested right. As to the declarations of Mrs. Martin, while under coverture, as to the husband’s right, they were mere babble which go for nothing, as the law is very clear, that no act or words of her’s would go to affect her husband’s right to the property.
There is, however, another ground in this case which would silence all other claims whatever ; that is, Martin’s possessory right. This possession tor such a number of years, would, alone give him an unquestionable claim to the negroes in question. Therefore, upon every ground, I think the verdict ought to remain unimpeached, and that the motion should be rejected.